UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Robert Banks

   v.                               Civil No. 09-cv-326-JD

Mark Hall, et al.[1]

### REPORT AND RECOMMENDATION

Before the Court is Robert Banks' complaint (document no. 1), filed pursuant to 42 U.S.C. § 1983, alleging that the defendants, New Hampshire State Troopers, subjected him to excessive force during an October 11, 2008 arrest. The matter is before me for preliminary review to determine, among other things, whether or not Banks has stated any claim upon which relief might be granted. See 28 U.S.C. § 1915A; United States District Court District of New Hampshire Local Rule 4.3(d)(2) (authorizing the Magistrate Judge to conduct preliminary review of cases filed by pro se prisoners).

---

[1] Plaintiff has named the following New Hampshire State Troopers as defendants to this action: Mark Hall, Robert Lima, Dean Holston, Francesco Campo, Michael Cedrone, Gerard Ditolla, and Chad Lavoie. Plaintiff has also named as defendants State Police dog "Kia" and the New Hampshire Treasurer.

## Standard of Review

Under this Court's local rules, when an incarcerated person commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review. LR 4.3(d)(2). In conducting the preliminary review, the Court construes all of the factual assertions in the pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals). This review ensures that pro se pleadings are given fair and meaningful consideration.

To determine if a pro se complaint states any claim upon which relief could be granted, the Court must consider whether the complaint, construed liberally, Erickson, 551 U.S. at 94,

"contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Inferences reasonably drawn from the plaintiff's factual allegations must be accepted as true, but the Court is not bound to credit legal conclusions, labels, or naked assertions, "devoid of 'further factual enhancement.'" Id. (citation omitted).  Determining if a complaint sufficiently states such a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citation omitted).

Background[2]

On October 11, 2008, Robert Banks was arrested after a high speed motor vehicle pursuit. Banks states that as he traveled through the town of Candia, New Hampshire, New Hampshire State Trooper (hereinafter "Tpr.") Mark Hall rammed Banks' car while Banks was traveling at 70-75 mph, in an effort to spin Banks' car and stop it. Banks claims that Hall's actions placed him in fear for his life, as he felt that Hall was ready to stop him at any cost and without regard to Banks' safety. Banks states that because he was afraid, he increased his speed to over 80 mph. Hall rammed Banks' car twice more. Eventually, Banks' car was disabled and came to a stop. At that time, Banks states that seven police officers were chasing him.

---

[2] Banks has attached a number of documents to his complaint, including medical paperwork, photographs of what purport to be the injuries he complains of in this action, and police reports written by the defendants regarding Banks' October 11, 2008 arrest. The police reports Banks has attached tell a substantially different version of events than that in Banks' narrative. For purposes of conducting the preliminary review of this matter, I must consider Banks' version of events to be true in order to determine whether or not he has stated a claim upon which relief might be granted. See Ashcroft, 129 S. Ct. at 1949. In doing so, however, I intend no comment on the merits of Banks' version of events vis à vis the officer's versions of events. Determinations of merit will be decided at a later stage of the proceedings on a more developed record.

Once his car was stopped, Banks asserts that he was concerned he would not be able to escape in his car if his safety was endangered by the pursuing police officers, as the car might have sustained damage in the pursuit. Banks also states that he believed that, if he stayed inside his car, the police chasing him might shoot him. Believing he would be safest out in the open, Banks claims that he got out of his car, took a few steps away from the car, and immediately raised his hands in the air so the officers could see them. Presumably following police directives, Banks states he then got on the ground, face-down and on his stomach, and placed his hands behind his back. Banks states that once on the ground, he waited to be handcuffed and did not resist arrest in any way.

Banks states that although he was not resisting arrest, Tpr. Hall deployed his police dog, Kia, to bite Banks on his left upper thigh. Upon being bitten, Banks states that he stiffened up in response to the pain of the bite, but did not do anything else to resist. Banks states that there were at least seven state troopers on the scene, and that none of the troopers did anything to call off Kia, who continued to bite and chew into Banks' leg for ten minutes, despite Banks' lack of resistance.

Banks states that while he was on the ground, and while Kia was biting him, he was also tazed by four different officers on different parts of his body.  At that time, Banks states that his body did thrash in response to the shock of being tazed, but that he did not intentionally resist arrest.  Additionally, Banks states that, during the ten minutes Kia had hold of his leg, officers were beating him by kicking his left leg, smashing his face into the pavement, and kicking him in the face, back, kidneys, and arms.  Eventually, Banks states, he was handcuffed, and Kia was finally called off and released his leg.

 Banks required immediate medical attention at the hospital for the dog bite, which caused a large hole in his leg, damage to the muscle and several lacerations.  Banks also suffered a broken nose, broken eye socket, a blood clot in his right eye, cuts to his face, and bruises all over his body, including a very large bruise in his kidney area.  Banks' blood pressure was elevated as a result of the incident.  Banks has, as a result of the circumstances of his arrest, permanent damage to his leg as well as his eye and vision.

 After being treated at the hospital, Banks was released to the house of corrections.  On October 15, 2008, Banks had to

return to the hospital because the wound in his leg had become badly infected and needed to be surgically opened to drain. Banks stayed in the hospital for three days to resolve the infection. None of the police officers involved in his arrest was injured.

## Discussion

I. <u>42 U.S.C. § 1983</u>

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law. See 42 U.S.C. § 1983[3]; <u>City of Okla. City v. Tuttle</u>, 471 U.S. 808, 829 (1985); <u>Wilson v. Town of Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002). In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation. See <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v. Flores</u>,

---

[3] 42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

103 F.3d 1056, 1061-62 (1st Cir. 1997). Banks alleges that his federal constitutional rights have been violated by state actors. Banks' claims, therefore, arise under § 1983.

## II. Excessive Force

Banks claims that the defendant officers brutalized him by sending a dog to bite him, not releasing the dog for ten minutes, beating and kicking him, and tazing him. Banks asserts that these acts were unreasonable under the circumstances, and therefore violated his right not to be subjected to excessive force during his arrest.

Whether or not the use of force in effecting an arrest is excessive is analyzed under the Fourth Amendment's prohibition against "unreasonable" seizures of the person. See U.S. Const. amend. IV[4]; Chavez v. Martinez, 538 U.S. 760, 773 n.5 (2003) (citing Graham v. Connor, 490 U.S. 386, 395 (1989), for the proposition that the Fourth Amendment provides an explicit source

---

[4]The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

of constitutional protection against excessive force at arrest); Morelli v. Webster, 552 F.3d 12, 24 (1st Cir. 2009). To garner the protections of the Fourth Amendment, Banks must first demonstrate that he was seized by asserting facts that allege he was subjected to "governmental termination of freedom of movement through means intentionally applied." Scott v. Harris, 550 U.S. 372, 381 (2007) (citing Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989)). Here, Banks states that he was seized at the time his car was disabled by Tpr. Hall.[5] The officers then continued the seizure of his person once he was out of the car. Accordingly, Banks' claim arises, if at all, under the Fourth Amendment.

To establish a Fourth Amendment excessive force claim, a plaintiff must show that the defendant officers "employed force that was unreasonable under all the circumstances." Morelli, 552 F.3d at 23 (citing Graham, 490 U.S. at 396). To make this determination, the Court should look to such criteria as the severity of the alleged offense, whether or not the arrestee posed an immediate threat to the safety of anyone else, and

---

[5]The Troopers' reports, submitted by Banks, also state that Banks' car was disabled by the officers in an attempt to stop the chase, although the Troopers' claim the car was disabled by "stop sticks" placed in the road which deflated one of Banks' tires.

whether or not the arrestee was actively resisting arrest or attempting to flee.  See id.  Here, Banks alleges that when he was on the ground, he was subjected to excessive force by the officers deploying and refusing to call off Kia, beating and kicking him, and tazering him.  I apply the criteria, as set out above, to determine whether or not Banks' allegations state an excessive force claim upon which relief might be granted.

     First, while it is unclear from the complaint why the Troopers were chasing Banks, Banks concedes that, at the time the allegedly excessive force occurred, the officers had just witnessed Banks drive at extremely high speeds on public roadways in an effort to elude them.  Additionally, Banks acknowledges that, at the time he got out of his car, the officers may well have believed that he posed a threat based on the fact that he had attempted to get away from them in a dangerous manner.  Banks also asserts, however, that when he got out of the car he no longer posed any threat and that he made efforts to insure the officers on the scene knew that.  Specifically, he got out of the car, immediately put space between himself and the car so that the officers needn't be concerned that he was in reach of anything in the car, raised his empty hands in the air so the

officers could see them, lay down on his stomach, and placed his hands behind his back.  Banks claims that from the moment he stepped out of his car, he surrendered himself to the authority of the officers, and did not attempt to flee, resist arrest, or fight the officers in any way.  Banks points to the fact that no officers reported receiving any injuries at all, the number of officers present, and his own actions to support his assertion that, at the time the allegedly excessive force was used by officers, he presented no threat and was not resisting arrest.

Banks suffered significant injuries during the arrest.  Banks' leg was not only bitten by Kia, but, he claims, was chewed into for ten minutes before the officers would call the dog off, causing severe and permanent damage to his leg, including muscle loss.  Further, Banks received injuries and bruises all over his body, supporting his claim that he was beaten in the face and kidney area, causing broken bones as well as extensive bruising.  These facts, which I accept as true for purposes of preliminary review, tend to support Banks' claim that the force applied to arrest him was unnecessary and excessive under the circumstances described by Banks.  For all of these reasons, I find that Banks has stated sufficient facts to allege excessive force on the part

of the seven State Trooper named as defendants to this action, as he claims that all of them participated in inflicting excessive force on him. In my Order issued simultaneously with this Report and Recommendation (hereinafter the "Simultaneous Order"), I direct that Banks' excessive force claim be served on New Hampshire State Troopers Mark Hall, Robert Lima, Dean Holston, Francesco Campo, Michael Cedrone, Gerard Ditolla, and Chad Lavoie.

III. Failure to Intervene

"An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance." Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 n.3 (1st Cir. 1990) (citing cases). Here, Banks alleges that while he was in the process of being arrested, Kia chewed into his leg for ten minutes after it became clear that he was not resisting arrest or fighting the officers in any way. None of the officers on the scene, however, ordered Kia to release Banks' leg, or did anything at all to prevent the use of excessive force by Kia or the other officers on the scene. Accordingly, I find that Banks has stated sufficient facts to

support his claim that the seven defendant troopers: Hall, Lima, Holston, Campo, Cedrone, Ditolla, and Lavoie, failed to intervene to protect Banks from the other officers and Kia when her own handler did not call her off.  Accordingly, in my Simultaneous Order, I will direct service of Banks' failure to intervene claim on these defendants.

IV.   Eighth Amendment Claim

Banks invokes the Eighth Amendment's protection from cruel and unusual punishment in describing the constitutional violations he claims to have suffered at his arrest.  As stated above, the Fourth Amendment provides arrestees protection from excessive force.  See Chavez, 538 U.S. at 773 n.5; Graham, 490 U.S. at 395 Morelli, 552 F.3d at 24.  The protections of the Eighth Amendment do not attach until after a person is convicted and sentenced. See Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.").  Accordingly, I find that the Eighth Amendment does not provide Banks with a claim for relief in this matter, and I recommend that Banks' asserted Eighth Amendment claim be dismissed from this action.

V.   Kia

Banks has sued Kia, the police dog that bit him.  Section 1983 applies only to a "person" who acts under color of state law.  See 1 U.S.C. § 1 (defining the word 'person' to include "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals" but not dogs or other animals); Dye v. Wargo, 253 F.3d 296, 299 (7th Cir. 2001) (plaintiff alleging excessive force at arrest cannot sue police dog as dog is not a proper defendant in § 1983 litigation); Smith v. P.O. Canine Dog Chas, 2004 WL 2202564, at *6-7 (S.D.N.Y. Sept. 28, 2004) (police dog is not a person under § 1983); Fitzgerald v. McKenna, 1996 WL 715531, at *7 (S.D.N.Y. Dec. 11, 1996) (denying attempt to maintain § 1983 action against police dog because "animals lack capacity to be sued").  Because Kia is a dog, she cannot be sued under § 1983.  Accordingly, I recommend that Kia, and any claims asserted against her, be dismissed from this action.

VI.  Personal and Official Capacity Suits/Eleventh Amendment

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.  Official-capacity suits, in contrast, 'generally

14

represent only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165-67 (1985) (quoting Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)) (additional internal citation omitted)).  Section 1983 suits for damages against state officers in their official capacities are barred by the Eleventh Amendment unless the state has expressly waived immunity, which has not been done by New Hampshire for actions brought under § 1983.  See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a state nor agencies acting under its control may be subject to suit in federal court); Negron-Almeda v. Santiago, 579 F.3d 45, 52 (1st Cir. 2009) (citing Wang v. N.H. Bd. of Reg. in Med., 55 F.3d 698, 700 (1st Cir. 1995)).  Accordingly, I construe the claims as having been asserted against the defendant officers in their individual capacities.  To the extent Banks intended claims against the officers in their official capacities, or against the State Treasurer, these state defendants are immune from such suit.  I therefore recommend that the official capacity claims against the officers and the State Treasurer be dismissed from this action.

Conclusion

For the foregoing reasons, I recommend dismissal of the official capacity claims, the Eighth Amendment claim, and defendants Kia and the State Treasurer from this action. In the Simultaneous Order, I will direct service of the Fourth Amendment excessive force and failure to intervene claims against State Troopers Hall, Lima, Holston, Campo, Cedrone, Ditolla, and Lavoie in their individual capacities. Any objections to this report and recommendation must be filed within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See Unauth. Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_/s/ James R. Muirhead_
James R. Muirhead
United States Magistrate Judge

Date:   January 20, 2010

cc:     Robert Banks, pro se

JM:jba